MH

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Eric Kevin Pesqueira, | No. CV 15-01426-PHX-DGC (ESW) |
| Plaintiff, | |
| v. | **ORDER** |
| Charles L. Ryan, et al., | |
| Defendants. | |

On July 24, 2015, Plaintiff Eric Kevin Pesqueira, who is confined in the Arizona State Prison Complex (ASPC)-Lewis, filed a pro se civil rights Complaint pursuant to 42 U.S.C. § 1983. Shortly thereafter, Plaintiff paid the filing and administrative fees. In a September 18, 2015 Order, the Court dismissed Defendants Ryan, Pratt, McKamey, Corizon, Sedlar, Reece, and Does I-IV. The Court also determined that Plaintiff had adequately alleged a claim against the Defendant identified in the Complaint as "John Doe Nurse." Plaintiff was given 30 days to file a written response that included either (1) the name of "John Doe Nurse," or (2) an explanation of what Plaintiff had done to try to learn this Defendant's name, a description of what discovery Plaintiff would undertake to learn his name, and the identity of at least one person who could be served with discovery.

On September 24, 2015, Plaintiff filed a Response to the Court's September 18, 2015 Order (Doc. 9), a Motion to Alter or Amend the September 18, 2015 Order

TERMPSREF

(Doc. 10), and a First Amended Complaint (Doc. 11).  The Court will order Defendant Sedlar to answer Counts One and Two of the First Amended Complaint and will dismiss without prejudice Defendant McKamey, Defendant Salas, Defendant John Doe/RF, and the Defendants identified as Jane Does.  Plaintiff's Motion to Alter or Amend will be denied as moot.

**I.    Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) (emphasis added).  While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct.  *Id.* at 681.

**TERMPSREF**

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a pro se prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

## II. First Amended Complaint

In his two-count First Amended Complaint, Plaintiff asserts claims of constitutionally deficient medical care. He names as Defendants Corizon Health ("Corizon"), a private corporation that contracts with the Arizona Department of Corrections (ADC) to provide health care to inmates; Arlene McKamey, a unit provider at ASPC-Florence; Nurse Sedlar, a nurse at ASPC-Florence; John Doe ("Doe #1"), a nurse at ASPC-Florence; Christine Salas, a nurse at ASPC-Florence; an unidentified number of ASPC-Florence nurses identified as "Jane Does"; and John Doe/RF ("Doe #2"), an x-ray technician at ASPC-Florence. Plaintiff seeks injunctive relief and monetary damages.

According to Plaintiff, the facts alleged in each count of the First Amended Complaint involve "the same exact incident." Plaintiff states that he separated his claim into two counts so that he could "separately address" two distinct injuries. Because these injuries arise out of one occurrence, the Court will analyze Plaintiff's allegations as though they were set forth in a single count.

Plaintiff alleges that on September 25, 2013, he fell while playing basketball at ASPC-Florence. According to Plaintiff, his right hand was "severely injured[,] displaying extreme swelling, with the highpoint almost like a tennis ball cut in half." (Doc. 11 at 5.) For several weeks, Plaintiff "brought this to the nurse's attention every time they delivered [his] med[ication]s." (*Id.*) Plaintiff allegedly showed the nurses his hand, verbally requested attention, and wrote detailed health needs request forms (HNRs). Plaintiff claims that these exchanges "occurred with several nurses," including Defendant Sedlar. (*Id.*) Over the course of several weeks, Defendant Sedlar told

TERMPSREF

1  Plaintiff that the medical provider was not in or that the medical provider would not talk
2  to Sedlar that day.  She also told Plaintiff that he was on the waiting list for x-rays, even
3  though medical records show that he was not on the waiting list for x-rays at that time.
4  Plaintiff further alleges that Defendant Sedlar erroneously indicated in response to one of
5  Plaintiff's HNRs that he had been seen by a doctor.

6        Plaintiff claims that another nurse, "who seemed new," did not place Plaintiff on
7  an emergency line because, according to her, she was "letting Sedlar take care of it."  (*Id.*
8  at 6.)  John Doe #1 allegedly saw Plaintiff's hand but refused to talk to anyone about
9  Plaintiff's condition or about having Plaintiff "called in."  (*Id.*)  John Doe #1 also refused
10 to get Plaintiff ice, or some other form of pain management, despite being aware of the
11 severity of Plaintiff's injury.  According to the First Amended Complaint, Doe #1
12 "straight out told [Plaintiff] that [he] would have to wait for [his] HNR to be answered."
13 (*Id.*)  Plaintiff also alleges that his HNRs requesting pain management were ignored.
14 And when he did see a provider who attempted to treat him, "the central office denied
15 [that provider's] first requested medication" and "vaguely" responded that Plaintiff
16 should continue to be treated with non-steroidal anti-inflammatories (NSAIDs), even
17 though Plaintiff's record revealed that NSAIDs had proven ineffective.  (*Id.* at 8.)

18       Nurse Salas saw Plaintiff's hand and told Plaintiff that she would have him placed
19 on the doctor's line, but he was never placed on the line.  The Jane Doe Defendants
20 allegedly saw Plaintiff's hand as well.  In addition, Plaintiff claims that John Doe #2
21 delayed the x-rays on Plaintiff's hand.  According to Plaintiff, these x-rays were ordered
22 October 9, 2013, but were not performed until October 17, 2013.  When x-rays were
23 eventually performed, they revealed that Plaintiff had broken his fourth and fifth
24 metacarpals.  By the time Plaintiff was sent for "proper attention" on November 4, 2013,
25 it was too late for the surgeon to perform the necessary surgery on his hand.  (*Id.* at 7.)

26       On December 16, 2013, Plaintiff learned from the surgeon that, as a result of the
27 delayed treatment and the surgeon's inability to operate, Plaintiff's broken fingers would
28 no longer fully extend.  In addition, Plaintiff's fourth finger "loosely shakes back and

**TERMPSREF**

forth as if not even connected." (*Id.* at 7.)  On March 26, 2014, Plaintiff saw a hand specialist.  The specialist informed Plaintiff that he would not operate on Plaintiff's fingers without operating on Plaintiff's wrist.  Plaintiff elected not to have the surgery performed because, at the time, the risks associated with the operation outweighed any potential benefit.  According to Plaintiff, these risks are much greater than they would have been had surgery been performed in a timely manner.  As a result of Defendants' conduct, Plaintiff claims, he suffered permanent injury to his hand and wrist and endured "unrelenting[,] significant pain."   (*Id.* at 8.)

### III.     Failure to State a Claim

To prevail in a § 1983 claim, a plaintiff must show that (1) acts by the defendants (2) under color of state law (3) deprived him of federal rights, privileges or immunities and (4) caused him damage. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir. 2005) (quoting *Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n*, 42 F.3d 1278, 1284 (9th Cir. 1994)).  In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

Not every claim by a prisoner relating to inadequate medical treatment states a violation of the Eighth or Fourteenth Amendment.  To state a § 1983 medical claim, a plaintiff must show that the defendants acted with "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  A plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) the defendant's response was deliberately indifferent. *Jett*, 439 F.3d at 1096 (quotations omitted).

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).  To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; "the official must both be

TERMPSREF

- 5 -

aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. *Jett*, 439 F.3d at 1096. Deliberate indifference may also be shown when a prison official intentionally denies, delays, or interferes with medical treatment or by the way prison doctors respond to the prisoner's medical needs. *Estelle*, 429 U.S. at 104-05; *Jett*, 439 F.3d at 1096.

Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Farmer*, 511 U.S. at 835. "Neither negligence nor gross negligence will constitute deliberate indifference." *Clement v. California Dep't of Corr.*, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); *see also Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983). "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). The indifference must be substantial. The action must rise to a level of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105.

**A.     Corizon**

To state a claim under § 1983 against a private entity performing a traditional public function, such as providing medical care in a prison, a plaintiff must allege facts to support that his constitutional rights were violated as a result of a policy, decision, or custom promulgated or endorsed by the private entity. *See Tsao v. Desert Palace, Inc.,* 698 F.3d 1128, 1138-39 (9th Cir. 2012); *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997). Because there is no respondeat superior liability under § 1983, a defendant's position as the employer of someone who allegedly violated a plaintiff's constitutional

TERMPSREF

- 6 -

rights does not make it liable.

Plaintiff's allegations of delayed treatment are not sufficient to state a claim against Corizon because he has not alleged any facts showing that his constitutional rights were violated as a result of a policy, decision, or custom promulgated or endorsed by Defendant Corizon.  Indeed, after being identified as a Defendant in the caption, Corizon is not mentioned again in the First Amended Complaint.  Accordingly, Plaintiff has failed to state a claim against Corizon, and it will be dismissed without prejudice.

### B.     Defendants Salas and Jane Does

Plaintiff's allegations against Defendants Salas are not sufficient to state a claim under the Eighth Amendment.  Plaintiff alleges that Defendant Salas saw his injury and knew of its severity but failed to have him placed on the doctor's line, despite having told Plaintiff she would place him on the line.  However, it is not clear from the First Amended Complaint that Plaintiff's failure to get placed in the doctor's line was the result of Defendant Sedlar's deliberate indifference.  At most, Plaintiff's allegations demonstrate that Defendant Salas was negligent.  As noted above, an allegation of negligence is not sufficient to state a claim for deliberate indifference pursuant to § 1983. *See Broughton*, 622 F.2d at 460.  Accordingly, Defendant Salas will be dismissed.

Plaintiff's allegations against the nurses identified as "Jane Does" are similarly deficient.  His claim against these Defendants is limited to an allegation that, after he showed them his hand, treatment was not provided in a timely manner.  However, there are many possible explanations for the delay in treatment that do not involve the deliberate indifference of the Jane Doe Defendants.  In short, Plaintiff has failed to allege facts sufficient to support that the Jane Doe Defendants acted with deliberate indifference, and these Defendants will also be dismissed.

### C.     Doe #2

Plaintiff has failed to state an Eight Amendment claim against Doe #2 because he has not alleged facts demonstrating that this Defendant was aware of Plaintiff's serious medical need.  While Plaintiff alleges that x-rays were ordered on October 9, 2013, it is

TERMPSREF

- 7 -

1 not clear from his allegations that Doe #2 knew about this order at any point before he x-
2 rayed Plaintiff's hand on October 17, 2013.  Even if Plaintiff had alleged that Doe #2
3 knew about the outstanding x-ray order, it is not clear that the alleged delay was the result
4 of deliberately indifferent, rather than merely negligent, conduct.  Accordingly, Doe #2
5 will be dismissed.

### D. Defendant McKamey

Plaintiff has not alleged any facts against this Defendant.  Therefore, Defendant McKamey will be dismissed.

## IV. Claims for Which an Answer Will be Required

Liberally construed, Plaintiff has stated a claim against Defendants Sedlar and Doe #1.  In light of the difficulties associated with serving a summons and complaint on an anonymous Defendant, however, the Court will not direct that service be made on John Doe #1 at this time.  If the identity of Doe #1 is revealed through the discovery process, Plaintiff may amend his pleading to name that individual as a Defendant herein.

## V. Motion to Alter or Amend September 18, 2015 Order

In light of the Court's decision to screen the First Amended Complaint, Plaintiff's Motion to Alter or Amend the September 18, 2015 Screening Order is moot, and it will be denied on that basis.

## VI. Warnings

### A. Address Changes

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure.  Plaintiff must not include a motion for other relief with a notice of change of address.  Failure to comply may result in dismissal of this action.

### B. Copies

Because Plaintiff is currently confined in an Arizona Department of Corrections unit subject to General Order 14-17, Plaintiff is not required to serve Defendants with a copy of every document he files or to submit an additional copy of every filing for use by

TERMPSREF

1 the Court, as would ordinarily be required by Federal Rule of Civil Procedure 5 and Local Rule of Civil Procedure 5.4.

**If** Plaintiff is transferred to a unit other than one subject to General Order 14-17, he will be required to: (a) serve Defendants, or counsel if an appearance has been entered, a copy of every document that he files, and include a certificate stating that a copy of the filing was served; and (b) submit an additional copy of every filing for use by the Court. *See* Fed. R. Civ. P. 5(a) and (d); LRCiv 5.4.  Failure to comply may result in the filing being stricken without further notice to Plaintiff.

### C.     Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice.  *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)     Plaintiff's Motion to Alter or Amend (Doc. 10) is **denied** as moot.

(2)     Defendants Corizon Health, Arlene McKamey, Christine Salas, John Doe #2, and Jane Does are **dismissed** without prejudice.

(3)     Defendant Sedlar must answer Counts One and Two of the First Amended Complaint.

(4)     The Clerk of Court must send Plaintiff a service packet including the First Amended Complaint (Doc. 11), this Order, and both summons and request for waiver forms for Defendant Sedlar.

(5)     Plaintiff must complete[1] and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order.  The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

---

[1] If a Defendant is an officer or employee of the Arizona Department of Corrections, Plaintiff must list the address of the specific institution where the officer or employee works.  Service cannot be effected on an officer or employee at the Central

**TERMPSREF**

- 9 -

(6) If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and First Amended Complaint on a Defendant within 120 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

(7) The United States Marshal must retain the Summons, a copy of the First Amended Complaint, and a copy of this Order for future use.

(8) The United States Marshal must notify Defendant of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. The notice to Defendant must include a copy of this Order. **The Marshal must immediately file signed waivers of service of the summons. If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must**:

    (a) personally serve copies of the Summons, First Amended Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

    (b) within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, First Amended Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant

---

Office of the Arizona Department of Corrections unless the officer or employee works there.

**TERMPSREF**

pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(9) **A Defendant who agrees to waive service of the Summons and First Amended Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff.**

(10) Defendant Sedlar must answer the First Amended Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(11) This matter is referred to Magistrate Judge Eileen S. Willett pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

Dated this 30th day of October, 2015.

_____
David G. Campbell
United States District Judge

**TERMPSREF**